IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

EPI-USE SYSTEMS LIMITED,

    Plaintiff,

    v.

BI BRAINZ, LLC, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:20-CV-2356-TWT

## OPINION AND ORDER

This is a breach of contract case. It is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 86]. For the reasons set forth below, the Plaintiff's Motion for Summary Judgment [Doc. 86] is GRANTED.

### I. Background

The Defendant BI Brainz, LLC ("BI Brainz") is a business intelligence and analytics company that was cofounded by the Defendant Rumico Tang Yuk. (Defs.' Statement of Additional Facts in Opp'n to Pl.'s Mot. for Summ. J. ¶ 1.) On October 31, 2018, the Defendants entered into a Loan and Security Agreement ("the Loan Agreement") with the Plaintiff EPI-USE Systems Limited ("EUS") and the Counterclaim Defendant EPI-USE America, Inc. ("EUAM"). (Pl.'s Statement of Undisputed Material Facts in Supp. of Pl.'s Mot. for Summ. J. ¶ 1.) On the same day, BI Brainz executed and delivered two promissory notes to EUS. (*Id.* ¶¶ 2–3.) The first, referred to in the Loan

Agreement as "the Note", evidenced a loan with a principal amount of $300,000. (*Id.* ¶ 2.) The Second, "the LOC Note," evidenced a line of credit of up to $100,000. (*Id.* ¶ 3.) Months later, the Parties executed an amendment to the Loan and Security Agreement ("the First Amendment") on May 15, 2019. (Compl. at 39.) The First Amendment indicated that EUS was providing an additional loan of $30,000 to BI Brainz, evidenced by a third promissory note ("the $30K Note"). (*Id.*) The Plaintiff or an affiliate advanced the funds referenced in the notes. Since these documents (collectively, "the Agreements") were executed, BI Brainz has made no payments towards any of these agreements and promissory notes. (*Id.* ¶ 14.) The Plaintiff brought this action seeking repayment of the indebtedness against BI Brainz and Ms. Tang Yuk, who it alleges guaranteed BI Brainz's obligations under these agreements. (Compl., Counts I & II.) In response, the Defendants brought counterclaims against EUS and EUAM for breach of fiduciary duties or, in the alternative against EUS, aiding and abetting EUAM's breach. (Defs.' Am. Counterclaims, Counts I, II, & III.) The Plaintiff now seeks summary judgment on its claims.

## II.   Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress*

2

*& Co.*, 398 U.S. 144, 158–59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

### III. Discussion

In its Motion for Summary Judgment, the Plaintiff argues that the facts show that the Defendants have defaulted on their obligations under the Agreements, and that the Defendants cannot point to any admissible fact that would indicate a possible defense or issue of genuine material fact. (Pl.'s Br. in Supp. of Pl.'s Mot. for Summ. J., at 13.) In particular, the Plaintiff identifies three events of default: the failure to make any payment on the Note and the LOC Note, as well as the failure to deliver quarterly financial reporting documents. (*Id.* at 7.) The Defendants respond by raising several procedural and substantive points. First, they argue that the Plaintiff's Motion is premature, as it was filed months before discovery was set to end. (Defs.' Br. in Opp'n to Pl.'s Mot. for Summ. J., at 1.)[1] The Defendants point to the depositions noticed but not yet taken and ask the Court to deny the Motion pursuant to Federal Rule of Civil Procedure 56(d). (*Id.* at 8–11.) Second, the

---

[1] After the Parties completed briefing on this motion, the Parties jointly moved for an extension of discovery, which now extends to January 31, 2022.

Defendants make the substantive argument that they have indicated a genuine issue of material fact as to whether an event of default has occurred. (*Id.* at 11–15.) With regards to its financial obligations, the Defendants argue that the Plaintiff's "repeated acceptance of nonpayment in deviation of the terms of the Loan Documents gives rise to a factual dispute as to whether it waived its right to monthly payment and created a 'quasi-new agreement' as to the due date of payments." (*Id.* at 14.) With regards to delivery of the financial reporting documents, they point to evidence that BI Brainz held monthly calls with the Plaintiff to discuss the relevant financials. (*Id.* at 15; *see also* Defs.' Statement of Additional Facts in Opp'n to Pl.'s Mot. for Summ. J. ¶ 19.) In its Reply Brief, the Plaintiff argues that the Defendants' arguments under Rule 56(d) are insufficiently specific to delay adjudication of the Motion. (Pl.'s Reply Br. in Supp. of Pl.'s Mot. for Summ. J., at 4–5.) With regards to the Defendants' substantive arguments, the Plaintiff argues there is insufficient evidence supporting the Defendants' waiver argument and that it provided the Defendants with notice under O.C.G.A. § 13-4-4 so that any quasi-new agreement was terminated in favor of the original contractual terms. (*Id.* at 7–12.)

### A. Admitted Factual Background

The Court begins with the Parties' Statements of Undisputed Material Facts. Under this Court's Local Rules, movants "for summary judgment shall include with the motion and brief a separate, concise, numbered statement of

the material facts to which the movant contends there is no genuine issue to be tried." N.D. Ga. Local R. 56.1(B)(1). Among other limitations, this Court will not accept facts "stated as an issue or legal conclusion[.]" N.D. Ga. Local R. 56.1(B)(1)(c). Respondents may respond to these proposed facts with "individually numbered, concise, nonargumentative responses" and provide their own Statement of Additional Undisputed Material Facts. N.D. Ga. Local R. 56.1(B)(2)(a)(1), (B)(2)(b). After reviewing the putative facts and the corresponding responses:

> This Court will deem each of the movant's facts as admitted unless the respondent: (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1(B)(1).

N.D. Ga. Local R. 56.1(B)(2)(a)(2).

Many of the Plaintiff's alleged facts are stated as legal conclusions and thus cannot be deemed admitted by the Court. For example, the Plaintiff asserts that the Defendants are obligated to pay it a specific amount of unpaid principal and interest, as well as attorneys' fees under O.C.G.A. § 13-1-11. (Pl.'s Statement of Undisputed Material Facts ¶¶ 28–33.) The Defendants' alleged obligations under the Agreements are questions of law, and thus cannot be admitted as undisputed facts under the Local Rules. The same is true for the Plaintiff's allegations that the Defendants made absolute or

5

unconditional guarantees and allegations that certain events of default have occurred. (*Id.* ¶¶ 6–9, 13, 16–18.) Finally, while the text of the Agreements here is relevant, the Plaintiff's paraphrasing of certain provisions are also not proper facts. (*Id.* ¶¶ 15, 19–22.)

The Defendants run afoul of these limitations, too, and the Plaintiff correctly objects to the submission of additional facts that merely paraphrase the Agreements or state legal conclusions. (Defs.' Statement of Additional Facts ¶¶ 5, 12–15.) Further, many of the Defendants' proposed facts appear relevant for their counterclaims but not for the Plaintiff's claims at issue in this motion. As such, these facts are deemed immaterial for the purposes of this Motion. After reviewing the Parties' proposed facts, the Court will rely on the text of the Agreements and the properly alleged facts to support its analysis.

### B. The Defendants' Rule 56(d) Motion

The Court must address the Defendants' Rule 56(d) request before the substantive merits of the Plaintiff's motion. As the Eleventh Circuit has noted:

> Rule 56(d), by its terms, requires only that a non-moving party show by affidavit or declaration that, for specified *reasons*, it cannot present facts essential to justify its opposition. Its very purpose is to provide an additional safeguard against an improvident or premature grant of summary judgment and the rule generally has been applied to achieve that objective.

*Estate of Todashev v. United States*, 815 F. App'x 446, 453 (11th Cir. 2020) (internal punctuation and quotation marks omitted). The Eleventh Circuit has

6

liberally applied Rule 56(d) in favor of nonmovants when they identify information not yet obtained and how that information could support a defense. For example, in *Estate of Todashev*, the Court of Appeals reversed a district court's denial of a nonmovant's Rule 56(d) motion because the nonmovant "explained, with as much specificity as he can, the informational disparity that renders him unable to adequately respond to the motion." *Id.,* at 453. In this case, the Defendants have not identified any information in the control of the Plaintiff that would support a defense to liability on the notes. In contrast, the Eleventh Circuit has affirmed the denial of such a motion as within a district court's discretion where the discovery requests would likely not support a nonmovant's argument. *See, e.g.*, *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1280–81 (11th Cir. 1998).

The Defendants have had an opportunity to engage in discovery and the Plaintiff has responded to their discovery requests. Here, the Defendants have not identified any information obtainable through further discovery that would tend to support any defense to the Plaintiff's claims. In their Opposition Brief, the Defendants note that recently produced documents have revealed "that contrary to the Loan Agreement, EUS did not actually fund the loan to [BI Brainz]; instead, EUAM and/or another EPI Entity, EUUK, actually lent the money." (Defs.' Br. in Opp'n to Pl.'s Mot. for Summ. J., at 10.) The Defendants argue that this line of inquiry is "critical to [their] defense and counterclaims in this matter." (*Id.)* As they argue in their Opposition Brief, the fact that

7

another entity provided the funds at issue indicates "that EUS assigned its obligations and, potentially, its rights under the Loan Documents to others." (*Id.* at 23.) And because the Loan Agreement contains an anti-assignment provision, the Defendants claim that the Plaintiff is estopped under Georgia law from enforcing these contracts against them. (*Id.* at 23–24.)

The Court does not agree. In general, the identity of the funder for the loans is immaterial. The Defendants agreed to pay the Plaintiff. "An assignment occurs when one party transfers to another its interest and obligations in a contract." *Forest Commodity Corp. v. Lone Star Indus., Inc.*, 255 Ga. App. 244, 245 (2002). In Georgia, a written agreement is not required to indicate an assignment has occurred; instead, "an assignment can be inferred from the totality of the circumstances[.]" *Id.* at 247. The Defendants rely on an email written by an EUS employee, John Mcfadzean, which appears states that EUS was used in the agreement because it "was easiest at the time, but the investment is a US investment and [EUS] will probably look to classify this as a loan to [EUAM] anyway." (Elliott Dec., Ex. C, at 60.) Even if this email implied that an assignment was imminent, subsequent emails between Mcfadzean and his colleague dispel that possibility, as he then informs his colleague that the decisionmakers have to decided that the financing should be done "in line with the various agreements." (*Id.*, Ex. C, at 59.) Thus, regardless of whatever debates were happening behind the scenes, the evidence indicates that EUS ultimately funded the loan, and the Defendants have presented no

evidence of any assignment. As this line of inquiry is the only one identified by the Defendants in seeking relief under Rule 56(d), they have not met their burden, and the Court will continue to the merits of the Plaintiff's Motion for Summary Judgment.

### C. The Alleged Events of Default

The Court now turns to whether the undisputed facts indicate that the Defendants defaulted on their obligations under the Agreements. "In a suit to enforce a promissory note, a plaintiff establishes a prima facie case by producing the note and showing that it was executed." *L.D.F. Family Farm, Inc. v. Charterbank*, 326 Ga. App. 361, 363 (2014). Once the prima facie case is established, "the plaintiff is entitled to judgment as a matter of law unless the defendant can establish a defense." *Id.* (internal quotation marks omitted). The same is true for suits enforcing personal guaranties. *Id.* The Defendants do not dispute that the agreements were executed and that they have made no payments towards the notes. (Defs.' Response to Pl.'s Statement of Undisputed Material Facts in Supp. of Pl.'s Mot. for Summ. J. ¶¶ 1–5, 14.) Further, they do not dispute that the Loan Agreement states that Ms. Tang Yuk, as a guarantor, "absolutely and unconditionally guarantees the payment and performance of [BI Brainz'] obligations with respect" to the Note and the $30K Note. (*Id.* ¶¶ 7, 9.) However, they do dispute the allegation that the failure to make any payments "constituted an event of default." (*Id.* ¶ 14.) The Defendants claim that the evidence indicates a genuine issue of material fact

9

remain regarding the availability of defenses, and thus summary judgment cannot be granted. (Defs.' Br. in Opp'n to Pl.'s Mot. for Summ. J., at 11–12.) First, the Defendants claim that the Plaintiff's "repeated acceptance of nonpayment in deviation of the terms of the Loan Documents gives rise to a factual dispute as to whether it waived its right to monthly payment and created a 'quasi-new agreement' as to the due date of payments." (*Id.* at 14.) In Georgia, evidence of repeated late, irregular payments accepted by the seller can create a factual dispute as to whether a quasi-new agreement was created. *Hatchett Firm, P.C. v. Atlanta Life Fin. Grp., Inc.*, 358 Ga. App. 607, 609 (2021). This reasoning extends to nonpayments "in deviation from the terms stipulated in the" relevant contract. *Id.* For example, the Georgia Court of Appeals recently found that a subtenant's partial payments for ten months and nonpayments for six months created a genuine issue of material fact as to the existence of a quasi-new agreement. *Id.* Here, the Parties agree that the Plaintiff did not demand payment for sixteen months. (Defs.' Br. in Opp'n to Pl.'s Mot. for Summ. J., at 1–2; Pl.'s Reply Br. in Supp. of Pl.'s Mot. for Summ. J., at 10.) To counter the Defendants' argument here, the Plaintiff claims that Georgia law requires evidence "so manifestly consistent with an intent to relinquish" a contractual right, and that mere acceptance of nonpayments cannot on its own suggest waiver. (*Id.* at 9–10.) Ultimately, these arguments might prevail over the Plaintiff's showing here. However, at the summary judgment stage, Georgia law clearly recognizes that acceptance of nonpayment

can create a jury question as to the existence of a quasi-new agreement, even in the face of an anti-waiver provision. *Hatchett Firm, P.C.*, 358 Ga. App. at 609. Thus, for those sixteen months, the evidence here indicates a genuine issue of material fact as to whether the parties' mutual conduct caused a waiver and effected a quasi-new agreement.

In their Reply Brief, the Plaintiff argues that even if a genuine issue of material fact exists as to the creation of a quasi-new contract, such an implied contract was terminated under O.C.G.A. § 13-4-4, which states:

> Where parties, in the course of the execution of a contract, depart from its terms and pay or receive money under such departure, before either can recover for failure to pursue the letter of the agreement, reasonable notice must be given to the other of intention to rely on the exact terms of the agreement. The contract will be suspended by the departure until such notice.

The undisputed facts show indicate that the Defendants received letters from EUS on April 20, 2020 and June 1, 2020, and that they "did not pay the amounts requested in" those letters. (Defs.' Response to Pl.'s Statement of Undisputed Material Facts ¶¶ 24, 26.) The Defendants do not dispute the substance of the letters, but rather dispute whether the claimed defaults represented actual defaults or that the amounts demanded were due. (*Id.* ¶¶ 23, 25.) Thus, if the April 20 and June 1 letters represent reasonable notice under O.C.G.A. § 13-4-4, then any quasi-new agreement would be terminated. While the relevant case law outlining sufficient notice under § 13-4-4 is sparse, these letters gave the Defendants reasonable notice that the Plaintiff intended

11

to rely upon the terms of the original agreement. For example, in *Georgia Income Property Corp. v. Murphy*, 182 Ga. App. 101, 102–03 (1987), the Georgia Court of Appeals found that a letter "stating that unless all past-due rental and mortgage payments were received within 10 days, it would be considered in material default of its obligations" was sufficient notice under § 13-4-4. Although the April 20 letter makes no mention of § 13-4-4, it does highlight the three events of default claimed by the Plaintiff and demands payments due under the Agreements. (Pl.'s Br. in Supp. of Pl.'s Mot. for Summ. J., Ex. 6, at 67–68.) The April 20 letter went on to acknowledge that the Defendants might "be unable to pay in full all amounts required" and offered an opportunity to discuss an agreement "establishing a payment plan[.]" (*Id.*, Ex. A-6, at 68.) The June 1 letter claims that the events of default were not cured following the April 20 letter and informs the Defendants that "EUS will rely on and require your strict compliance with the precise terms of the Loan Documents." (*Id.* Ex. A-7, at 69–70.) Both the April 20 and June 1 letters provided the Defendants with reasonable notice that the Plaintiff would rely on the original terms of the Agreements. Therefore, under Georgia law, there is no genuine issue of material act that the Plaintiff's failure to make any payments towards these obligations following the receipt of those letters represents an event of default under the Agreements.

As to the Plaintiff's third alleged event of default, there remain genuine issues of material fact. The Defendants highlighted communications already

in evidence indicating they sent financial information to the Plaintiff. (Defs.' Response to Pl.'s Statement of Undisputed Material Facts in Supp. of Pl.'s Mot. for Summ. J. ¶ 18.) In its Reply Brief, the Plaintiff argues that because the nonpayments already represent an event of default, "the adequacy of the financial disclosures does not preclude summary judgment on EUS's claims." (Pl.'s Reply Br. in Supp. of Pl.'s Mot. for Summ. J., at 14.) In this way, the Plaintiff does not dispute that genuine fact issues remain as to this third alleged event of default. In summary, the Court finds that the Plaintiff has made a prima facie case to enforce the Agreements and Ms. Tang Yuk's guaranties of those Agreements, and the Defendants' claimed defenses fail. As a result, the Plaintiff is entitled to summary judgment as to Counts I and II.

### D. Attorney Fees under O.C.G.A. § 13-1-11

The Plaintiff argues that it is entitled to attorneys' fees pursuant to O.C.G.A. § 13-1-11(a), which states:

> Obligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, shall be valid and enforceable and collectable as a part of such debt if such note or other evidence of indebtedness is collected by or through an attorney after maturity[.]

The Plaintiff argues that if it is entitled to summary judgment on Counts I and II, it is entitled to summary judgment on its claim for attorneys' fees, as well. (Pl.'s Br. in Supp. of Pl.'s Mot. for Summ. J., at 17–18.) The Defendants do not address this claim directly in their briefing, noting only that fact issues preclude summary judgment on the Plaintiff's "derivative" fee claim. (Defs.' Br.

13

in Opp'n to Pl.'s Mot. for Summ. J., at 15.) However, as detailed above, there are no fact issues precluding summary judgment on this claim. Under § 13-1-11(a)(3), the note holder must inform a debtor or guarantor that they have ten days to pay the outstanding principal and interest to avoid any payment of attorneys' fees. Where § 13-1-11's conditions have been clearly satisfied, the attorneys' fees sought are mandatory. *Austin v. Bank of Am., N.A.*, 293 Ga. 42, 51 (2013). Here, the Plaintiff wrote in its Complaint that the Defendants had ten days to pay the outstanding balance before it would seek attorneys' fees. (Compl. ¶¶ 44–45.) This language in the Complaint serves as notice to the Defendants under § 13-1-11(a)(3), and thus § 13-1-11 is satisfied. As a result, there is no genuine issue of material fact as to whether the Defendants are entitled to attorneys' fees, and the Plaintiff's Motion for Summary Judgment is granted as to Count III.

### IV. Conclusion

For the reasons set forth above, the Plaintiff's Motion for Summary Judgment [Doc. 86] is GRANTED. The Defendants have pending counterclaims against the Plaintiff and Counterclaim Defendant EUAM. An appropriate judgment will be entered upon the disposition of all pending claims.


in Opp'n to Pl.'s Mot. for Summ. J., at 15.) However, as detailed above, there are no fact issues precluding summary judgment on this claim. Under § 13-1-11(a)(3), the note holder must inform a debtor or guarantor that they have ten days to pay the outstanding principal and interest to avoid any payment of attorneys' fees. Where § 13-1-11's conditions have been clearly satisfied, the attorneys' fees sought are mandatory. *Austin v. Bank of Am., N.A.*, 293 Ga. 42, 51 (2013). Here, the Plaintiff wrote in its Complaint that the Defendants had ten days to pay the outstanding balance before it would seek attorneys' fees. (Compl. ¶¶ 44–45.) This language in the Complaint serves as notice to the Defendants under § 13-1-11(a)(3), and thus § 13-1-11 is satisfied. As a result, there is no genuine issue of material fact as to whether the Defendants are entitled to attorneys' fees, and the Plaintiff's Motion for Summary Judgment is granted as to Count III.

### IV. Conclusion

For the reasons set forth above, the Plaintiff's Motion for Summary Judgment [Doc. 86] is GRANTED. The Defendants have pending counterclaims against the Plaintiff and Counterclaim Defendant EUAM. An appropriate judgment will be entered upon the disposition of all pending claims.

SO ORDERED, this \_\_\_25th\_\_\_ day of January, 2022.

                                                                       THOMAS W. THRASH, JR.
                                                                       United States District Judge